OPINION
{¶ 1} Defendant-appellant Derrick Anderson Hastings appeals his conviction from the Stark County Court of Common Pleas on one count each of trafficking in cocaine, possession of cocaine, trafficking in marijuana and possession of marijuana. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On July 26, 2001, the Stark County Grand Jury indicted appellant on one count each of trafficking in cocaine in violation of R.C. 2925.03(A)(2), a felony of the third degree, possession of cocaine in violation of R.C. 2925.11(A), a felony of the fourth degree, trafficking in marijuana in violation of R.C. 2925.03(A)(2), a felony of the fourth degree, and possession of marijuana in violation of R.C.2925.11(A), a minor misdemeanor. At his arraignment on August 17, 2001, appellant entered a plea of not guilty to the charges contained in the indictment.
 {¶ 3} Thereafter, a jury trial commenced on December 18, 2001. The following evidence was adduced at trial.
 {¶ 4} Detective Steve Shaffer of the Canton Police Department testified at trial that the Police Department had received several complaints that drugs were being sold at a residence located at 1017 Lippert Road, N.E. in the City of Canton. According to Detective Shaffer, "[t]he specifics were that three individuals at the residence were selling crack cocaine at various hours of the night." Transcript at 140-141. The occupants of the house were Ruth Ungar, who was appellant's girlfriend and who owned the house, Amy Condos and appellant. While appellant did not live at the house, according to the Detective, he stayed there overnight.
 {¶ 5} As a result of the complaints, surveillance was conducted commencing in early June of 2001. When asked what he observed in conducting surveillance, Detective Shaffer responded as follows:
 {¶ 6} "My observation was that people were coming and going to the house. They would stay for a few minutes, either enter the house or stay out on the porch. They would then leave, like I said, staying for a few minutes, which is very consistent with a drug house." Transcript at 142. Based on his observations, the Detective concluded that some type of drug activity was occurring at the residence.
 {¶ 7} Thereafter, on June 5, 2001, members of the Canton Vice Squad conducted a controlled buy through a confidential informant who was given a $20.00 bill to purchase crack cocaine. The informant was observed approaching a black male on the front porch of 1017 Lippert Road, N.E. After the informant engaged in conversation with the unidentified black male, the black male was observed by Detective Shaffer going into the residence and then returning a minute or so later. When the informant reported to the police, it was learned that he had purchased a single rock of crack cocaine for $20.00.
 {¶ 8} After the June 5, 2001, controlled buy, additional surveillance was conducted in order to make sure that the sale was not, as Detective Shaffer testified, a "one-time thing." Transcript at 148. During the surveillance, heavy foot and vehicular traffic, consistent with drug trafficking, was observed. For such reason, another controlled buy using the confidential informant was conducted on June 26, 2001. Once again, the officers observed the informant purchase crack cocaine for $20.00 from a black male on the front porch of the subject residence. When questioned at trial, Detective Shaffer testified that he was unable to identify the black male on the front porch. A third controlled buy using the same technique and pattern as the two previous buys was conducted on June 28, 2001. However, during the third buy, the confidential informant went into the residence with the black male and then exited the residence after completing the drug transaction.
 {¶ 9} After the third buy, Detective Shaffer obtained a search warrant on June 29, 2001, that was executed the same evening at approximately 2200 hours, which was approximately the time that the controlled buys had been made. While executing the warrant, Detective Shaffer observed a white female and a white male get into a car that was parked in the driveway of 1017 Lippert Road, N.E. and drive away. When the vehicle was finally stopped, the driver, who was Amy Condos, and her passenger were both detained. When the officers entered the residence on Lippert Road, they discovered Ungar and appellant in the house with four small children. During a pat down search, the officers found six individually wrapped packages of marijuana in appellant's front right pocket and $207.00 in currency in his left pocket. One of the $20.00 bills found on appellant's person matched a $20.00 bill that had been used in one of the controlled buys. In addition, two bags of crack cocaine, which contained a total of 19 rocks, were found underneath a couch cushion in the living room and another bag of marijuana with a little more than three grams in it was also discovered in the residence. However, no drug paraphernalia was found during the raid. When asked whether appellant made any statements to him that night, Detective Shaffer responded as follows: "He told me that he doesn't sell crack cocaine; however, he does sell marijuana." Transcript at 170.
 {¶ 10} At trial, Ruth Ungar, appellant's girlfriend and co-defendant, testified on appellant's behalf. Ungar, who prior to appellant's trial had pleaded guilty to one count of possession of cocaine and four counts of child endangering[1], testified that she and appellant were "trying to be a couple" and that he stayed overnight "some nights" at her house. Transcript at 251, 255. Ungar, during cross-examination, admitted that she told the police that she knew that appellant was selling marijuana. However, Ungar testified that she did not know that the crack cocaine was in her living room and that she did not know how the crack cocaine got there.
 {¶ 11} At the conclusion of the evidence and the end of deliberations, the jury, on December 19, 2001, found appellant guilty of all of the charges contained in the indictment. Thereafter, as memorialized in a Judgment Entry filed on January 3, 2002, the trial court sentenced appellant to four years in prison on the trafficking in cocaine charge and to a consecutive twelve month prison sentence for the trafficking in marijuana charge. In addition, the trial court imposed a concurrent twelve month sentence for the cocaine possession charge and fined appellant $100.00 for the offense of possession of marijuana.
 {¶ 12} It is from his conviction that appellant now appeals, raising the following assignment of error:
 {¶ 13} "The Jury Verdict Finding Appellant Guilty Of Trafficking In Cocaine And Possession Of Cocaine Was Against The Manifest Weight Of The Evidence In Violation Of The Due Process Clause Of TheFourteenth Amendment To The United States Constitution."
 I {¶ 14} Appellant, in his sole assignment of error, argues that his convictions for trafficking in cocaine and possession of cocaine were against the manifest weight of the evidence. We disagree.
 {¶ 15} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, citing State v.Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass
(1967), 10 Ohio St.2d 230, 227 N.E.2d 212, syllabus 1.
 {¶ 16} Appellant, in support of his argument that his conviction for trafficking in cocaine and possession of cocaine were against the manifest weight of the evidence, argues that the only evidence linking him to the cocaine was the $20.00 bill in his pocket that matched a bill used during a controlled buy. Appellant further points out that the cocaine was found under the cushions of a couch that was not close to appellant, that appellant did not live in the house, that there were no fingerprints connecting the cocaine to appellant, and that Detective Shaffer could not identify appellant as the person who had sold the cocaine to the confidential informant. According to appellant, "[o]ther than being in the home where the cocaine was found there is no evidence that Appellant was aware of the cocaine."
 {¶ 17} However, upon our review of the record, we cannot say that the jury, in convicting appellant of trafficking and possession of cocaine, lost its way so as to create a manifest miscarriage of justice. As is discussed above, evidence was adduced at trial that, during the relevant time period, appellant, a black male, and Ungar, the owner of the house, had some type of romantic relationship and that appellant stayed overnight at the house. During their surveillance of the house, officers observed a black male on the front porch of Ungar's house engaging in drug transactions. During the three controlled buys using an informant, the informant purchased crack cocaine from such individual using $20.00 bills. When the search warrant was executed, appellant and Ungar were both in the house and appellant, who admitted to selling marijuana, had marijuana bagged for sale on his person. In addition, one of the $20.00 bills located on appellant, who had a total of $207.00 on his person, was one of the $20.00 bills used during one of the controlled buys. While 19 rocks of crack cocaine were found in two bags underneath a living room couch cushion, no drug paraphernalia was located in the house. Thus, there were no items associated with ingesting crack cocaine found in the residence during the raid.
 {¶ 18} In short, based on the foregoing, we concur with appellee that someone had been selling crack cocaine from the residence and that the jury, based upon all of the facts, reasonably concluded that the "someone" was appellant. We find, therefore, that based upon the record as a whole, the jury, as trier of fact, clearly did not lose its way in convicting appellant of trafficking in cocaine and possession of cocaine.
 {¶ 19} Appellant's sole assignment of error is, therefore, overruled.
 {¶ 20} Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed. By Edwards, J.
Hoffman, P.J. and Farmer, J. concur.
[1] As of the time of the trial, Ungar was receiving treatment at the Quest House.